UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CRAIG H. HATCH,                                  Case No.  24-30363
                                                 Chapter 13
     Debtor,                                     Hon. Joel D. Applebaum

_____/

CRAIG H. HATCH,

     Plaintiff,

v.                                               Adv. Proc. No. 25-3033

CAMERON HATCH,

     Defendant,

and

MELISSA A. CAOUETTE,
Standing Chapter 13 Trustee,

     Intervening Plaintiff,

v.

CAMERON HATCH,

     Defendant.

_____/

## OPINION AND ORDER GRANTING THE CHAPTER 13 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Motion for Summary Judgment (the "Motion") filed by intervening plaintiff, Melissa Caouette, in her capacity as the standing chapter 13 trustee ("Trustee").

## **INTRODUCTION**

Plaintiff/Debtor Craig Hatch ("Plaintiff") filed this adversary proceeding against his son, Cameron Hatch ("Defendant"), seeking to quiet title to property located at 4226 S. Dye Road, Swartz Creek, Michigan (the "Property"). Underlying this adversary proceeding is a dispute over whether Plaintiff voluntarily transferred a quit claim deed (the "Deed") to Defendant, as Defendant claims, or whether Defendant stole the Deed from his father's business office, as Plaintiff claims. Defendant denies that a theft occurred, arguing instead that his father voluntarily transferred the Deed to him as a form of compensation. On September 3, 2025, pursuant to Court Order (Dkt. No. 24), the Trustee intervened in this adversary proceeding to protect the estate's interest in the Property.

For purposes of this Motion, and consistent with the standard applicable to adjudicating summary judgment motions, the Court takes as true Defendant's assertion that the transfer of the Deed was indeed voluntary. Accordingly, the only issue for the Court to decide in connection with the Trustee's Motion is whether a voluntary transfer of the Deed under these circumstances was legally effective or

2

whether the transfer should be avoided. For the reasons discussed below, the Court holds that the transfer should be avoided and, therefore, the Trustee's Motion is GRANTED.

## I.    FACTUAL BACKGROUND[1]

On February 29, 2024, debtor/plaintiff Craig H. Hatch filed a chapter 13 bankruptcy petition (Case No. 24-30363, Dkt. No. 1).[2] Melissa A. Caouette was appointed Chapter 13 Trustee for Plaintiff's bankruptcy case. Plaintiff's Schedule A, filed on March 5, 2024, lists the Property as an investment property with a value of $150,000 and equity in that same amount (Case No. 24-30363, Dkt. No. 10). Plaintiff's liquidation analysis lists his equity in the Property at $125,160 (Case No. 24-30363, Dkt. No. 13, Ex. 1; Dkt. No. 31, Ex. 5).

Both Plaintiff and Defendant acknowledge the existence of the Deed, dated March 1, 2024, transferring the Property from Plaintiff to Defendant for consideration of $1.00 (Dkt. No. 31, Ex. 3, Quit Claim Deed). Defendant asserts that Plaintiff voluntarily delivered the Deed to Defendant through Defendant's girlfriend, Sarah Thompson, who picked up the Deed at Plaintiff's office and witnessed the Deed signing "sometime in 2024." (Dkt. No. 8, Corrected Answer to

---

[1] The factual recitation herein is limited to the narrow issue presented.
[2] Unless otherwise noted, all docket numbers referenced in this Opinion are numbers found on the adversary case docket.

Complaint to Quiet Title, ¶ 16; Dkt. No. 35, Affidavit of Sarah Thompson).[3] While Defendant acknowledges that the Deed was "delivered" to him, he claims that he did not "accept" the Deed at that time and, therefore, the transfer was not completed until he formally accepted (and recorded) the Deed in April 2025. It is undisputed that Plaintiff did not obtain Court authorization to transfer the Property to Defendant (Dkt. No. 31, Ex. 2, Docket from Main Case).

Plaintiff's Chapter 13 Plan was confirmed on September 19, 2024. (Dkt. No. 31, Ex. 5). Part V of Plaintiff's confirmed Chapter 13 Plan provides, in pertinent part:

> O. **VESTING, POSSESSION OF ESTATE PROPERTY AND LIEN RETENTION:** Upon the Effective Date of the Plan, all property of the estate shall vest in the debtor and shall cease to be property of the estate. The *debtor shall remain in possession of all property during the pendency of this case* unless specifically provided herein, *and shall not seek to sell, transfer or otherwise dispose of such property (except in the ordinary course of debtor's business) without prior Court approval*.

(emphasis added).

On March 31, 2025, Plaintiff issued to Defendant a notice to quit the Property. (Dkt. No. 1, Ex. A). On April 7, 2025, likely in response to the notice to quit,

---

[3] Plaintiff asserts he never delivered the Deed to Defendant or his girlfriend, nor did he authorize the Deed to be recorded (Dkt. No. 1, Complaint to Quiet Title, ¶¶ 13-17). For purposes of this motion, the Court assumes that the transfer was voluntary.

Defendant recorded the Deed with the Genesse County Register of Deeds (Instrument Number 202504070016416) (Dkt. No. 31, Ex. 3).

On May 7, 2025, Plaintiff filed this adversary proceeding seeking to quiet title to the Property and void the Deed. Plaintiff's complaint states that Plaintiff intends to sell the Property and use the sale proceeds to pay off his chapter 13 plan.

On June 3, 2025, Defendant filed his answer stating that the Property had been voluntarily and effectively transferred to Defendant who then had the Deed properly recorded.

On September 3, 2025, the Court entered its Order allowing the Chapter 13 Trustee to intervene as a plaintiff in this case and, on September 29, 2025, the Trustee filed her own complaint to avoid an improper post-petition transfer and to quiet title.

On October 31, 2025, the Trustee filed this Motion arguing that *as a matter of law* any voluntary transfer of the Property is void *ab initio* because the Property was either (i) property of the estate at the time of the transfer and the Court never granted permission for the Property to be transferred out of the bankruptcy estate, or (ii) the property had re-vested in Plaintiff/Debtor and, again, was transferred without permission from the Court in contravention of Plaintiff's chapter 13 plan (Dkt. No. 31). Plaintiff filed his concurrence with the relief being sought in the Trustee's Motion (Dkt. No. 34).

5

25-03033-jda    Doc 44    Filed 01/08/26    Entered 01/08/26 13:20:27    Page 5 of 14

On November 14, 2025, Defendant filed his response in opposition to the Motion, claiming that Plaintiff had effectively transferred the Property to Defendant and that neither Plaintiff nor the bankruptcy estate had any remaining claims to it (Dkt. Nos. 33, 35).

## II. JURISDICTION

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), and (H). This matter is also a core proceeding because it arises under title 11. All of the parties have consented to this Court entering a final judgment in this case.

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). Typically, the central inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Here, however, the Trustee's Motion presents a purely legal issue and, for the purposes of this Opinion,

the Court is treating all of the facts alleged by Defendant as true. Therefore, there are no evidentiary disagreements that would militate against deciding the Motion.

## IV.  ANALYSIS

As previously noted, the Trustee argues that as a matter of law any voluntary transfer of the Property is void *ab initio* because the Property was either (i) property of the estate at the time of the transfer and the Court never granted permission for the Property to be transferred out of the bankruptcy estate, or (ii) the property had re-vested in Plaintiff/Debtor and, again, was transferred without permission from the Court in contravention of Plaintiff's chapter 13 plan (Dkt. No. 31). Consequently, the Trustee seeks to avoid the post-petition transfer of Property pursuant to 11 U.S.C. §§ 363 and 549(a) and/or the terms of the confirmed plan; declare the Deed recorded with the Genesee County Register of Deeds to be null, void and of no force or effect; allow Plaintiff and/or the estate to recover the Property; and order Plaintiff to sell the Property to pay off his chapter 13 plan.

In contrast, Defendant argues that, under Michigan law, the transfer of a deed requires both delivery by the grantor and acceptance by the grantee. *Gibson v. Dymon*, 274 N.W. 739 (Mich. 1937); *Ligon v. Detroit*, 739 N.W.2d. 900, 905 (Mich. Ct. App. 2007). According to Defendant, he did not accept the Deed and the transfer did not complete until he recorded the Deed on April 7, 2025. Consequently, the transfer of the Property only became effective post-confirmation, at which time the

Property had revested in Plaintiff and was no longer property of the estate. *See,* 11 U.S.C. § 1327(b). (Dkt. 35, p. 4-6).

The significance of the completion of the transfer of the Deed post-confirmation, from Defendant's perspective anyway, appears to be this: If the Deed was transferred pre-confirmation, the transfer is void *ab initio*, as it was done in violation of §§ 363 and 549 of the Bankruptcy Code, whereas if the transfer occurred post-confirmation (but before plan completion), the Property was no longer property of the estate. And while the transfer admittedly violated the express terms of Plaintiff's confirmed plan, that simply means that the transfer is voidable, not void *ab initio*. Because the plan is silent on remedies for its violation, other remedies short of voiding the Deed or avoiding the transfer may be available that are less injurious to Defendant.

### A. <u>The Transfer is Voidable.</u>

Pursuant to 11 U.S.C. § 363(b), the transfer of property of the estate outside of the ordinary course of business may occur only after appropriate notice and a hearing. This requirement applies in chapter 13 cases. *See*, 11 U.S.C. §§ 103(a) and 1303. A failure to obtain Court authorization for a transfer outside of the ordinary course of business may, therefore, constitute an improper post-petition transfer avoidable under 11 U.S.C. § 549(a)(2)(B). Courts disagree, however, on whether a transaction outside the ordinary course of business without court authorization is

void *ab initio* or merely voidable. *See*, *In re Higgins*, 2024 WL 1985959, *4 (Bankr. E.D. Penn., May 3, 2024). This disagreement was discussed at length by the *Higgins* court which ultimately held that unauthorized post-petition transactions are voidable, not void *ab initio*, explaining:

> While the decisions are split, the Court sides with those decisions holding that post-petition transfers of estate property that do not comply with § 363(b)'s notice requirements are voidable, not void *ab initio*. It does so because that result harmonizes with § 549 of the Bankruptcy Code, which provides that the trustee "may avoid" unauthorized post-petition transfers. The statute's use of the term "may" indicates that avoidance is permissive, not mandatory. If unauthorized post-petition transfers were void *ab initio*, there would be no logic to § 549's permissive language; the trustee would not have a choice as to whether to avoid such a transfer because it would already be treated as if it never occurred. As such, based on the plain language of § 549, and following the line of cases finding as such, the Court holds that post-petition transfers that do not adhere to § 363's notice requirement are voidable, not void *ab initio*.

*Id*. (internal citations and quotations omitted). This Court agrees with the *Higgins* court's analysis and similarly holds that violations of § 363(b) are voidable, not void *ab initio*.

### B. The Deed Must be Voided.

Because it is undisputed that the Deed in this case was transferred without Court authorization, thereby violating either § 363(b) or the terms of Debtor's confirmed plan, the determinative question is not whether the transfer was completed

pre-confirmation or post-confirmation, but rather, whether avoiding the transfer and voiding the Deed is the appropriate remedy in this case.[4] The Court holds that it is.

Section 363(b) protects creditors of the bankruptcy estate from an unauthorized transfer of property to their detriment without adequate notice and opportunity for hearing. *See*, *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000). Part V of the confirmed plan in this case carries forward this important goal by protecting creditors from unauthorized transfers to their detriment during the long pendency of the plan. If, for example, this case was to convert from chapter 13 to chapter 7, the Property would revert to property of the estate and,

---

[4] Even assuming the date of completion of the transfer has relevance, the Court does not agree that acceptance occurred only when the Deed was recorded in April 2025. Rather, acceptance occurred when the Deed was placed in the safe under Defendant's control. "[W]here the transfer is plainly beneficial to the grantee [here, Defendant], acceptance will be presumed in the absence of proof to the contrary." *Hayes v. DiSalle (In re Hayes)*, 293 B.R. 420, 423 (Bankr. N.D. Ohio 2002). *Accord, In re Estate of Deschenes*, 818 A.2d 1026, n. 3 (Me. S. Ct. 2003)("'The delivery of a deed to a third person may be sufficient although no prior authority had been given by the grantee to receive the deed, where grantee subsequently assents, and as the deed is for the benefit of the grantee such assent will be prima facie presumed.'")(internal citations omitted). As the *Hayes* court explained,

> 'the true rule is that the presumption of acceptance can be rebutted only by proof of dissent; and it matters not that the grantee never knew of the convenance, for as his assent is presumed from its beneficial character, the presumption can be overthrown only by proof that he *did* know of and *rejected* it.'

*Hayes v. DiSalle (In re Hayes)*, 293 B.R. at 423. (emphasis in original, internal citation omitted). Michigan law is the same. *Schmidt v. Jennings*, 102 N.W.2d 589 (Mich. 1960).

because of these plan provisions, be available to satisfy the claims of creditors. *See*, 11 U.S.C. § 348(f)(1)(A). Without these plan provisions, however, a debtor could simply transfer or deplete his or her assets upon confirmation. Although the Court appreciates that voiding the Deed and avoiding the transfer will negatively affect Defendant, the paramount interests of Plaintiff's creditors take precedence.

Defendant argues that Plaintiff's post-confirmation transfer of the Deed to Defendant after the Property had re-vested in Plaintiff constitutes a valid transfer citing *In re Elassal*, 654 B.R. 434 (Bankr. E.D. Mich. 2023). In *Elassal*, the debtor proposed a chapter 13 plan which paid a minimum of $1,277.16 toward $93,805.83 in general unsecured claims. The debtor committed three years of her disposable income to keep her home valued at $250,000, in which she had equity of $22,000 (all of which would have been exemptible). Her plan was confirmed without objection. Less than two years later, defying any predictions, debtor's home sold for $435,000 providing the debtor with an unexpected windfall. The debtor, having paid off her secured creditors, sought court approval to use all of the sale proceeds to buy a new home for cash while continuing to make her promised payments to unsecured creditors over the remainder of her plan. The trustee objected and proposed a plan modification seeking to require the debtor to pay her unsecured creditors in full and letting her keep what remained of the proceeds of the sale after those creditors received payment in full. The court ruled against the trustee finding

that the debtor's home vested in her at confirmation along with its concomitant appreciation in value.

The *Elassal* case is distinguishable from the instant case because, in *Elassal*, *the debtor first obtained permission* from the Court to sell her home and was left with a windfall while, at the same time, meeting all of her plan obligations. Under the terms of the confirmed plan in that case, creditors had no expectation of benefiting from such windfall and, among other reasons, the court was unwilling to give them something for which they hadn't bargained.

In this case, the Court did not approve any transfer of the Property and such a transfer would diminish the property in Plaintiff's bankruptcy estate to the detriment of creditors, not create a windfall for Plaintiff. Transferring valuable property out of the bankruptcy estate is especially concerning during the first year of a five-year plan because, if the plan were to fail as many do, that asset would be irrevocably lost to Plaintiff's creditors. Only upon completion of Plaintiff's plan obligations, is he free to dispose of his property unfettered by the need to obtain Court authorization.

Defendant also argues that he should not be penalized by Plaintiff's failure to seek prior Court approval to transfer the Property or by Plaintiff's violation of the terms of his confirmed plan and the Court should explore other possible remedies. While it is certainly true that Defendant will not receive the Property, Defendant was well aware of Plaintiff's bankruptcy case and the restrictions placed on Plaintiff's

ability to transfer the Property. Indeed, Defendant unsuccessfully sought to manipulate the timing of his acceptance to avoid the pitfall associated with accepting an unauthorized transfer. The Deed also made clear the risks associated with the transfer:

> BE IT FURTHER KNOWN, that this transfer shall be effective as of 03/01/2024, and that the *Grantor makes no promises* as to the ownership of title to the above-referenced Property, but simply agrees to transfers [sic] whatever interest the Grantor has in it to the Grantee.

(Dkt. 31, Ex. 3) (emphasis added).

## V. CONCLUSION

Under the facts of this case, whether Plaintiff transferred the Deed to Defendant pre-confirmation or post-confirmation is immaterial to the Court's decision. Plaintiff was required to but did not obtain Court authorization to make the transfer. The transfer of the Property is detrimental to the paramount interests of Plaintiff's creditors and the estate and, regardless of the timing of the transfer, the Deed is void.

## ORDER

For the above-stated reasons,

IT IS HEREBY ORDERED that the Trustee's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that: (1) the transfer of the Property be avoided pursuant to 11 U.S.C. § 549(a) or, alternatively, pursuant to the express terms of the

confirmed plan; (2) the Deed recorded under instrument number 202504070016416 with the Genesee County Register of Deeds is voided and of no further force or effect; (3) Plaintiff shall recover the Property; and (4) Plaintiff shall file a motion to sell the Property and pay off his chapter 13 plan within 60 days from the date of this Opinion and Order.

**Signed on January 8, 2026**



/s/ Joel D. Applebaum

**Joel D. Applebaum
United States Bankruptcy Judge**